IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JENNIFER CHRISTIAN**, formerly known as JENNIFER HAVEMAN,<br><br>        Plaintiff,<br><br>    v.<br><br>**UMPQUA BANK**, an Oregon-for-Profit Banking Institution,<br><br>        Defendant. | Case No. 3:16-cv-01938-IM<br><br>**OPINION AND ORDER** |

Nadia H. Dahab, Sugerman Law Office, 707 SW Washington St., Ste. 600, Portland, Oregon 97205. Attorney for Plaintiff.

Leah C. Lively and Wm. Brent Hamilton, Jr., Davis Wright Tremaine, LLP, 1300 SW Fifth St., Ste. 2400, Portland, Oregon 97201; Melissa K. Mordy, Davis Wright Tremaine, LLP, 777 108th Ave., NE, Ste. 2300, Bellevue, Washington 98004. Attorneys for Defendant.

**IMMERGUT, District Judge.**

This case comes before this Court on remand from the Ninth Circuit. ECF 74. On appeal, the Ninth Circuit reversed the district court's grant of summary judgment in favor of Defendant Umpqua Bank on Plaintiff Jennifer Christian's retaliation claim, *see* ECF 49 (summary judgment motion); ECF 63 (district court opinion), holding that "Christian has satisfied each element of her prima facie case" and remanding for "the district court to consider whether Umpqua has met

PAGE 1 – OPINION AND ORDER

its burden to articulate a nonretaliatory reason for the adverse employment actions and, if so, whether Christian has satisfied her burden to show pretext." ECF 74 at 5.[1] Based on a review of the arguments and evidence presented, for the reasons stated below, this Court finds summary judgment is not appropriate on Plaintiff's retaliation claims under Title VII and the Washington Law Against Discrimination ("WLAD").

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the [non-movant's] position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find

---

[1] In a separate opinion, the Ninth Circuit reversed the district court's grant of summary judgment in Defendant's favor on Plaintiff's harassment claim. ECF 73. The Ninth Circuit held that "a trier of fact could find that the harassment altered the conditions of Christian's employment and created an abusive working environment," and "a jury reasonably could conclude that Umpqua ratified or acquiesced in the customer's harassment." *Id*. at 15, 20. This Court's opinion considers only Plaintiff's retaliation claims.

PAGE 2 – OPINION AND ORDER

for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

The evidence presented by the parties must be admissible. *Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1065 (C.D. Cal. 2002) (citing Fed. R. Civ. P. 56(e)). Further, the non-moving party may not rest on conclusory or speculative evidence but rather must "set forth specific facts in support of [its] . . . theory." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) (citing Fed. R. Civ. P. 56(e)).

## BACKGROUND

The facts of this case have been discussed at length in prior opinions, *see* ECF 73 at 3–9; ECF 63 at 2–9, and this Court provides only a brief summary of the pertinent facts.

Plaintiff was hired as Universal Associate by Defendant Umpqua Bank in 2009, and was promoted in 2014 from a Universal Associate II to a Universal Associate III. ECF 48, Joint Statement of Facts ("JSOF"), at ¶ 1. From 2011 to 2014, Plaintiff worked at the Downtown Vancouver, Washington store of Umpqua Bank. *Id*. at ¶ 3. While at that store, Plaintiff's manager was Chris Sanseri. *Id*. at ¶ 4.

Plaintiff opened an account for a customer ("the customer") in approximately 2013. ECF 58-1 at 4–5; ECF 49 at 11. Plaintiff "assisted him with his banking business" on subsequent occasions. ECF 59, Christian Decl., at ¶ 1; ECF 58-1 at 7–9. In late 2013 or early 2014, Plaintiff began receiving handwritten notes and flowers from the customer delivered to the store, and Plaintiff became aware that the customer was going to another Umpqua Bank store "asking [employees] how to get a date with [Plaintiff]." ECF 59, Christian Decl., at ¶¶ 2, 4; ECF 58-1 at 10. Plaintiff found this behavior concerning and "told [the customer] that [she] did not want to go on a date with him." But this did not stop the customer from delivering more letters to her and Plaintiff shared her concerns with others, including her manager, Sanseri. ECF 59, Christian

PAGE 3 – OPINION AND ORDER

Decl., at ¶¶ 2–8. Sanseri informed Plaintiff that he would no longer allow the customer to come into the store, and asked Plaintiff to call the customer to discuss his "inappropriate" behavior, which she did. ECF 58-1 at 21–23. Plaintiff, however, received a letter from the customer the following day and the customer continued at ask about Plaintiff at the other Umpqua Bank store. *Id*. at 28–29.

Several months later, in September 2014, the customer appeared at a charity event Plaintiff was attending on behalf of Umpqua Bank. ECF 59, Christian Decl., at ¶ 9. Plaintiff informed those volunteering that the customer was present and that she was afraid. *Id*. A few days later, the customer entered the store while Plaintiff was working and Sanseri asked Plaintiff to open a new account for the customer; Sanseri did not ask the customer to leave. *Id*. at ¶¶ 10–11. The customer again entered the store a few days later, and Plaintiff contacted her regional manager, Bobbi Heitschmidt, her human resources representative, Kris Wolfram, and another regional manager, Dan Souvenier, to discuss her concerns about the customer and Defendant's response. *Id*. at ¶ 12.

Plaintiff called in sick and refused to work at the Downtown Vancouver store until a no trespassing order was put in place. *Id*. at ¶ 13. Subsequently, after determining that no such order had been obtained, Plaintiff met with Heitschmidt and Wolfram about transferring to another store. *Id*. at ¶¶ 14–15. Plaintiff determined that the Salmon Creek store had an opening, though with a reduced hourly schedule and pay, but "decided it would be better than risking continued contact with [the customer]," and requested transfer there on October 4, 2014. *Id*. at ¶ 16; ECF 48, JSOF, at ¶ 24. Plaintiff was temporarily transferred to the Evergreen store for a few weeks beginning on October 6, 2014, and then transferred to the Salmon Creek store. ECF 48, JSOF, at ¶ 25; ECF 59, Christian Decl., at ¶ 18.

PAGE 4 – OPINION AND ORDER

While at the Evergreen store, Plaintiff's manager, Lori Wick, documented that Plaintiff made three errors, and informed Sanseri and Heitschmidt, who in turn informed Wolfram. ECF 59, Christian Decl., at ¶¶ 18–22. Following her transfer to the Salmon Creek store, Plaintiff's then-manager, Naomi Camargo, "prepared a formal written counseling" statement regarding those errors as well as additional complaints about Plaintiff's performance at work that occurred on November 12 and 14, 2014. *Id*. at ¶ 23. Also, while at the Salmon Creek store, "other associates . . . were instructed to audit and review [Plaintiff's] work," Plaintiff's "authority to make transactions" was reduced, and Camargo complained about Plaintiff's "reputation" and referred to her clothing as "unprofessional." *Id*. at ¶¶ 25–26, 28. On November 26, 2014, Plaintiff resigned from her position, stating "My doctor has declared it is bad for my health to continue working at Umpqua Bank." ECF 48, JSOF, at ¶ 29.

After obtaining a Notice of Right to Sue from the Equal Employment Opportunity Commission, Plaintiff filed suit in Oregon state court, alleging sexual harassment and retaliation in violation of Washington state and federal law. ECF 1-1. Defendant removed to federal court, ECF 1, and moved for summary judgment on both of Plaintiff's claims, ECF 49. The district court granted Defendant's motion for summary judgment. ECF 63.[2] Plaintiff timely appealed, and, as to the retaliation claims, the Ninth Circuit reversed the district court's ruling that Plaintiff failed to establish a prima facie case of retaliation. ECF 74. The Ninth Circuit remanded for this Court to consider whether Defendant has proffered a legitimate nonretaliatory reason for the adverse action alleged, and, if so, whether Plaintiff has offered sufficient evidence of pretext conduct the requisite burden shifting analysis. *Id*.

---

[2] The Honorable Anna J. Brown ruled on Defendant's motion to dismiss. ECF 63. This case was subsequently reassigned to this Court. *See* ECF 77.

**DISCUSSION**

Title VII prohibits "retaliation against an employee for making a charge or otherwise participating in a Title VII proceeding." *Nilsson v. City of Mesa*, 503 F.3d 947, 953 (9th Cir. 2007); *see* 42 U.S.C. § 2000e-3 (Title VII); Wash. Rev. Code § 49.60.210(1).[3] To establish a prima facie claim of retaliation, a plaintiff must demonstrate that "(1) she had engaged in protected activity; (2) she was thereafter subjected by her employer to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action." *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005). Once the plaintiff asserts a prima facie claim, "the burden shifts to [the defendant-employer] to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 800 (9th Cir. 2003); *see also Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011) (explaining that "[r]etaliatory discharge claims follow the same burden-shifting framework described in *McDonnell Douglas*"). "Only the burden of production shifts; the plaintiff still carries the burden of persuasion." *Lindsey v. Clatskanie People's Util. Dist.*, 140 F. Supp. 3d 1077, 1089 (D. Or. 2015). "If the employer provides a legitimate explanation for the challenged decision, the plaintiff must show that the defendant's explanation is merely a pretext for impermissible discrimination." *Dawson*, 630 F.3d at 936.

**A. Legitimate, Nondiscriminatory Reasons**

Because the Ninth Circuit determined that Plaintiff established a prima facie claim of retaliation, ECF 74, this Court now considers whether Defendant has articulated a legitimate nonretaliatory reason for the alleged adverse actions which occurred while Plaintiff was

---

[3] Because the substantive analysis for retaliation under Title VII and the WLAD is substantially similar, this Court analyzes the claims together. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003), *as amended* (Jan. 6, 2004).

employed at the Evergreen and Salmon Creek stores. *See id*. at 3 (finding evidence of adverse employment actions of "forced transfer or reduction in job duties").[4] This Court finds that Defendant has articulated legitimate nonretaliatory reasons for its actions.

Defendant asserts that Plaintiff made multiple "significant errors," in violation of company policies or procedure, which resulted in managers Wick and Camargo "admonishing" Plaintiff. ECF 49 at 19, 31. At the Evergreen store, Plaintiff "accepted a deposit of an unsigned check," "left for the evening without securing her cash drawer," and miscounted a deposit, all in violation of her job duties and Umpqua Bank's policies and procedures. ECF 56, Wick Decl., at ¶¶ 7, 9, 12. Wick sent an email to Plaintiff documenting these errors. *Id*. at ¶ 5; ECF 56-1 at 2. At the Salmon Creek store, Plaintiff "took a deposit of a $65,000 maker-to-maker check, but entered $6,500 on the deposit ticket." ECF 50, Camargo Decl., at ¶ 7. According to Plaintiff's then-manager, Camargo, this error violated procedures and "was especially troubling . . . because . . . Umpqua Bank associates are instructed to pay special attention to maker-to-maker checks because the risk of money laundering and fraud are greater when [these] checks are involved." *Id*. at ¶ 8. Additionally, though Plaintiff "had been assigned to check the mail every day," she "failed to check the mail." *Id*. at ¶ 9. Moreover, Camargo testified that changes in Plaintiff's "authority limits" or job duties, specifically a "restrict[ion] from opening new accounts and lending," were attributable to the Salmon Creek store being a "Legacy Sterling location" where tellers did not perform such functions. ECF 52-8 at 4–7.

---

[4] In its opinion, the Ninth Circuit identifies as adverse actions only the "forced transfer or reduction in job duties." ECF 74 at 3; *see also id*. at 4 (identifying, for purposes of causation, the adverse actions as "the transfer and reduction in job duties [that] took place in October and November 2014"). The district court previously considered whether Plaintiff was subjected to an adverse employment action and concluded she was not. ECF 63 at 20–21. For the purposes of determining whether summary judgment is proper, in light of the Ninth Circuit's remand, this Court considers as adverse actions only the transfer and reduction in duties.

PAGE 7 – OPINION AND ORDER

**B. Pretext**

A plaintiff may show that the employer's reasons are pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981). If a plaintiff relies on circumstantial evidence, that evidence must be "specific and substantial." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), *as amended* (Jan. 2, 2004). "Although 'the mere existence of a *prima facie* case, based on the minimum evidence necessary to raise a *McDonnell Douglas* presumption, does not preclude summary judgment,' 'the plaintiff [who has established a prima facie case] need produce very little evidence of discriminatory motive to raise a genuine issue of fact' as to pretext." *Warren v. City of Carlsbad*, 58 F.3d 439, 443 (9th Cir. 1995) (first quoting *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 890 (9th Cir. 1994), then quoting *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991)); *see also Schultz v. Wells Fargo Bank, Nat. Ass'n*, 970 F. Supp. 2d 1039, 1063 (D. Or. 2013) (explaining that "[a] plaintiff does not have to introduce additional, independent evidence at the pretext stage," and can survive summary judgment so long as the evidence supporting her prima facie case "raises a genuine dispute of material fact regarding the truth of the employer's proffered reasons" (internal quotation marks and citation omitted)).

Here, the "timing of events" supports an inference that the Defendant's conduct was in response to Plaintiff's complaints. *See* ECF 57 at 39. Specifically, there is a close temporal proximity between Plaintiff's complaints regarding harassment and Defendant's failure to act in September and October 2014, and the alleged retaliatory conduct consisting of her transfer and reduction in job duties in October and November 2014. ECF 74 at 4; ECF 59, Christian Decl., at ¶¶ 13–14, 17–23. This temporal proximity between Plaintiff's complaints and the alleged

PAGE 8 – OPINION AND ORDER

retaliatory conduct is "strong evidence of retaliation." *Stegall*, 350 F.3d at 1069; *see also T.L. ex rel. Lowry v. Sherwood Charter Sch.*, 68 F. Supp. 3d 1295, 1313 (D. Or. 2014), *aff'd sub nom. Lowry v. Sherwood Charter Sch.*, 691 F. App'x 310 (9th Cir. 2017); *Cleese v. Hewlett-Packard Co.*, 911 F. Supp. 1312, 1322 (D. Or. 1995) (denying summary judgment where plaintiff "relie[d] primarily on the suspicious timing of her discharge to support an inference that [defendant's] stated reason for terminating her is pretextual"). Prior to these incidences, Plaintiff had not been subject to significant negative reviews or disciplinary action. *See* ECF 59, Christian Decl., at ¶ 27; ECF 58-2 at 3–4; ECF 55-1; ECF 55-2.

There is also evidence that Plaintiff's complaints regarding the alleged harassment and Defendant's response to it were met with resistance. *See Lindsey*, 140 F. Supp. 3d at 1090 ("[T]emporal proximity between protected activity and adverse employment action, coupled with contemporaneous evidence of the employer's displeasure with the plaintiff, may serve as 'strong circumstantial evidence of retaliation.'" (quoting *Bell v. Clackamas Cnty.,* 341 F.3d 858, 865 (9th Cir. 2003)). For instance, during a phone call with Heitschmidt regarding Plaintiff's concerns about the customer and Defendant's response, Plaintiff testified that "I couldn't get through all the facts with [Heitschmidt] because she interrupted me and said, Jennifer, just get to the point," and that in response to Plaintiff's concerns, Heitschmidt said she did not know what Plaintiff "want[ed] [her] to do about it." ECF 58-1 at 55–56.[5] Plaintiff also testified that, following her complaints, Sanseri left her a voicemail in which he stated that though Defendant not yet able to "get a no trespassing order [against the customer]," "in the meantime . . . he really

---

[5] Though Defendant disputes that Heitschmidt's response reflected a lack of concern regarding Plaintiff's situation, *see* ECF 62-1 at 3; ECF 58-3 at 5, this Court "must view the evidence in the light most favorable to [Plaintiff]" and "resolve issues of credibility in favor of the non-moving party." *Stegall*, 350 F.3d at 1069.

PAGE 9 – OPINION AND ORDER

needed [Plaintiff] to come back to work because they were short staffed," ECF 58-1 at 62. She also testified that in response to her initial complaints to Sanseri regarding the customer's concerning behavior, Sanseri requested that Plaintiff call the customer herself "because it didn't seem like [Sanseri] wanted to deal with it," *id*. at 22.

Similarly, there are genuine issues of fact regarding whether and to what extent Plaintiff's managers at the Evergreen and Salmon Creek stores were aware of her protected activity. For instance, while Camargo denied knowledge of Plaintiff's complaints, *see* ECF 52-8 at 3; ECF 50, Camargo Decl., at ¶¶ 13–14, Plaintiff testified that Camargo spoke to Plaintiff about her "reputation that [Camargo] heard" as well as "other things that [Camargo] didn't want to talk about," ECF 58-1 at 65. Wick also denied knowledge of Plaintiff's complaints, *see* ECF 56, Wick Decl., at ¶¶ 13–14, but stated she was aware that Plaintiff had been harassed by a customer at another store resulting in her transfer, ECF 52-6 at 4–5. Their credibility is a question for the jury. *Liberty Lobby, Inc.*, 477 U.S. at 255.

"[I]n discrimination cases, an employer's true motivations are particularly difficult to ascertain, thereby making such factual determinations generally unsuitable for disposition at the summary judgment stage." *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 732–33 (9th Cir. 1986) (citations omitted) (reversing district court's dismissal of Title VII retaliation claim). Here, Defendant's motivations for its actions "present an 'elusive factual question.'" *Id*. at 733 (quoting *Burdine,* 450 U.S. at 255 n.8). Though Defendant may be able to prove at trial that its reasons were legitimate and nonretaliatory, on this record a reasonable trier of fact could conclude that Defendant's actions were motivated by an improper purpose in response to Plaintiff's protected activities. Summary judgment is therefore inappropriate on Plaintiff's retaliation claims under Title VII and the WLAD.

PAGE 10 – OPINION AND ORDER

## CONCLUSION

Pursuant to the Ninth Circuit's directive that this Court "consider whether Umpqua has met its burden to articulate a nonretaliatory reason for the adverse employment actions and, if so, whether Christian has satisfied her burden to show pretext," ECF 74 at 5, upon review of the arguments and evidence presented, this Court finds that while Defendant has articulated a nonretaliatory reason for the adverse actions, Plaintiff has satisfied her burden to show pretext. Accordingly, summary judgment on Plaintiff's retaliation claims under Title VII and the Washington Law Against Discrimination is not appropriate.

Trial is scheduled to begin on February 8, 2022. All pretrial filings are to be submitted consistent with this Court's case management order. *See* ECF 82. Parties are to notify this Court promptly if they require a status conference.

**IT IS SO ORDERED**.

DATED this 5th day of January, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge